## PIERCE vs. O'KEEFE.

ERROR TO CIRCUIT COURT, WALWORTH COUNTY.

Heard March 10.]                    [Decided June 4, 1860.

### *Trover—Agent and Principal.*

Where O. and P. had each stored wheat with M., both giving orders to forward the same to market, M. forwarded the wheat of O., by mistake, with that of P., and sold the whole together, in the name of P., and sent him the drafts for payment; O. afterwards brought an action against P., for the conversion of the wheat: Held, that the action could not be maintained.

A party is liable for the acts of another, in the following cases: where there exists the direct relation of master and servant; where the injury arises from something which amounts to a nuisance established upon the defendant's land; or where the act occurs in the execution of a work under public authority, by employees; but where the employee is engaged in a distinct and independent employment, and not under the immediate control and direction of the employer, the relation of master and servant does not exist, and the employer is not liable for the tortious acts, negligence, or want of skill of the employee.

Where M. had, by mistake, sold the wheat of O., with other wheat belonging to P., as the wheat of P., and sent the pay to P., and O., knowing the facts, elected to take the money, P. had paid part, and offered to pay the balance of the amount received for O.'s wheat, such act of O. was an affirmance of the act of M.; and it would make no difference that P. did not name the day on which he would pay the balance.

The facts in this case are fully stated in the opinion of the court.

*Winsor & Smith,* for the plaintiff in error.

*E. Elderkin,* for the defendant in error.

*By the Court,* PAINE, J.   This was an action brought by John A. Pierce, the defendant in error, against Patrick O'Keefe, the plaintiff in error, for the conversion of certain wheat.   The facts developed on the trial were these: O'Keefe worked for Pierce, and having some wheat, which he wished to sell, borrowed Pierce's bags, to take it to market.   Not having sold it, he stored it in the warehouse of Preston & Pope, at Elkhorn.   These parties had been receiving wheat for Pierce, and had some then on hand belonging to him; and he had previously given them directions to send his wheat to Milwaukee.   When they sent Pierce's wheat, they sent O'Keefe's with it, by mistake, supposing it all to belong to Pierce; and it was sold in Milwaukee with Pierce's, and the money deposited in the bank, to his credit.   After the facts were discovered, Pierce and O'Keefe had a conversation in respect to it, in which Pierce told the latter that he could take the money, or could make Preston & Pope give him other wheat.   And the plaintiff finally decided to take the money.   This he, himself, testified to.   Pierce also testified to the same thing, and further, that he paid him some money at that time, and when he received the remittance from Milwaukee, credited O'Keefe with the balance, on account, O'Keefe being indebted to him.   O'Keefe then caused a demand of the wheat to be made, and brought this action for a conversion.

The defendant's counsel asked the court, among other things, to instruct the jury, " that if Preston & Pope, before this time, or at this time, had been employed by the defendant to receive any wheat into their warehouse which defendant might send to them, and when ordered by defendant to ship the same for defendant, and for such service they received a certain commission, such employment did not constitute said Preston & Pope the general agents of said Pierce, so as to make him liable for any act beyond their special em-

ployment; and hence, if Preston & Pope, without any special authority from Pierce, the defendant, shipped the plaintiff's wheat to Milwaukee, the said defendant is not liable in this action, and their verdict should be for the defendant." This the court refused to give, and the defendant excepted. We think this refusal was error.

It seems very clear, that because Preston & Pope were Pierce's consignees, to receive and ship his wheat, that did not make him responsible, if they converted somebody else's wheat. He certainly gave them no authority to do so, and if liable at all, the liability must arise out of the mere fact that he had employed them to store his wheat, and ship it to Milwaukee.

The question how far a party is responsible for the negligence or torts of any person employed by him, while executing, or attempting to execute, the duties of that employment, has of late undergone much discussion, both in this country and in England; and although there have been some cases which have stated the law upon this subject, in terms so general and loose that it would hold a party responsible for the torts, negligence, or unskilfulness of any other whom he had employed, in no matter what capacity, while executing the employment, yet the later cases are discriminating much more closely, and are defining this liability in such manner as places it upon a much narrower, as well as much more rational basis. The case of *Hilliard vs. Richardson,* 3 Gray, 349, contains an elaborate review of the authorities upon the subject, and we consider the comments and conclusions of the court just and reasonable.

And although there may be exceptions and qualifications, which the question here presented does not require us to examine, the general result seems to be that such a liability arises only where there is the direct relation of master and servant, where the injury arises from something that amounts

to a nuisance established upon the defendant's land, or where it occurs in the execution of a work under public authority, where the law will not permit those to whom the power is delegated, to evade the responsibilities imposed, by employing others, even though they do so in such·manner that the direct relation of master and servant does not exist.

And where the person employed is in the exercise of a distinct independent employment, and not under the immediate control or direction of the employer, the relation of master and servant does not exist, and the employer is not responsible. *De Forest vs. Wright et al.*, 2 Gibbs, (Mich.) 368. Now that was the case here, Preston and Pope were in the exercise of a distinct employment, that of warehousemen and forwarders. They carried on this business on their own premises and not on the defendant's. They were no more the agents of the latter, than of O'Keefe, both having stored wheat at their warehouse. They did not stand in the relation of servants to either, but exercised an independent calling. If Pierce can be held liable for their converting this wheat, upon the same reasoning he would be liable if both he and O'Keefe had put their wheat on the cars to be transported to Milwaukee, and the railroad company had converted it in the same manner. Or if the company in transporting the wheat of both of these parties had negligently injured somebody else, they would both be liable. Such a doctrine, as was well remarked by the court in *Hilliard vs. Richardson*, " can only stand upon the general proposition that a person shall be answerable for any injury which arises in carrying into execution that which he has employed another to do; to adopt which would be to ignore all limitations of legal responsibility."

The defendant's counsel also asked the court to instruct the jury, that, " if they believe from the evidence that the defendant notified the plaintiff, that his wheat had been sold

in Milwaukee along with his, and that the money therefor had been deposited in a bank in Milwaukee, and that the said plaintiff had agreed or consented to take the money for said wheat, the said plaintiff thereby affirmed the sale of said wheat, and he could not afterwards bring an action like this for its conversion, and their verdict should be for the defendant." The court said that if the " instruction meant that the plaintiff agreed or consented to receive the money at some definite or fixed time, when the defendant promised to pay for the wheat, for instance in 30, 60, or 90 days, or even a longer time, but sometime was fixed; then he gave the instruction as requested; but if it meant that the plaintiff merely consented or agreed to receive the money for the wheat, but no time was fixed by the defendant when he would pay it, and no payment having been made, then he refused the instruction."

We think this also was erroneous. We are unable to see that the question whether any definite time of payment was fixed, has any bearing whatever upon the point. Preston and Pope whom the plaintiff had employed to store his wheat, had by a mistake very natural under the circumstances, caused it to be sold and the money deposited in a bank to the defendant's credit. The question was, whether he would take the money which the defendant had unwittingly received to his use, or, whether he would disaffirm the act of Preston and Pope, and hold them responsible for a conversion. He elected to take the money, and that was an affirmance of the sale, and it was just as much so whether any definite time of payment was fixed or not. Failure to pay could not make him responsible for the conversion, even if such an action could thereafter have been resorted to, against Preston and Pope, which would be very doubtful, particularly if the defendant did pay at the time a part, as he testified, and which the plaintiff did not deny.

This form of action seems to have been resorted to, for the purpose of preventing an offset of an account which the defendant had against the plaintiff.

The judgment is reversed with costs, and the cause remanded for a new trial.